# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
December 18, 2014

v

MARQUAN ANTONIO JACKSON,

      Defendant-Appellant.

No. 316433
Wayne Circuit Court
LC No. 12-008303-FJ

Before: RIORDAN, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right from his convictions following a jury trial of carjacking, MCL 750.529a, and armed robbery, MCL 750.529. The trial court sentenced defendant to serve 10 to 20 years' imprisonment for both convictions, with credit for 293 days served. We affirm defendant's convictions, but remand for resentencing.

## I. BASIC FACTS

On July 9, 2012, at around 7:00 a.m., Louis Poineau was driving to work when a vehicle passed him at a high rate of speed and then stopped in front of his vehicle. A tan colored SUV then rear-ended Poineau's vehicle, pushing him into the vehicle in front. Two males got out of the front vehicle and pulled Poineau out of his vehicle at gunpoint. Poineau said that four to six men surrounded him and demanded his money, which he turned over. The men also took his phone, his credit and debit cards, his identification, and his vehicle. On July 12, 2012, after turning himself in to the police, defendant confessed to participating in the carjacking and robbery of Poineau. He also made several incriminating statements in regard to a number of additional robberies and carjackings. Defense counsel moved to suppress defendant's statement as involuntary and, after a *Walker*[1] hearing, the trial court denied the motion. This ruling is challenged on appeal.

---

[1] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

Also at issue is the court's admission of testimony concerning an additional, uncharged carjacking. The victim of that carjacking, Gerald Moss, testified that he was carjacked and robbed at around 6:30 a.m. on July 9, 2012. Defendant also confessed to being a participant in this carjacking. Moss's vehicle was later used in the carjacking of Poineau. Moss identified defendant as being in the backseat of the perpetrators' vehicle. Defendant sought to suppress Moss's in-court identification because the initial identification occurred during the preliminary examination and was, according to defendant, impermissibly suggestive. After a *Wade*[2] hearing, the trial court found that there was an independent basis for Moss's in-court identification and denied defendant's motion to suppress the identification.

## II. VOLUNTARY CONFESSION

Defendant argues that the trial court erred in denying his motion to suppress his statement because his *Miranda*[3] waiver and confession were not voluntary. Defendant asserts the statement was involuntary because, although he told the police that he had asthma before he gave the statement, he was not taken to the hospital for treatment until approximately four hours after making the statement. "When reviewing a trial court's determination of the voluntariness of inculpatory statements, this Court must examine the entire record and make an independent determination, but will not disturb the trial court's factual findings absent clear error." *People v Shipley*, 256 Mich App 367, 372-373; 662 NW2d 856 (2003). "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that a mistake was made." *Id*. at 373. "[D]eference is given to the trial court's assessment of the weight of the evidence and credibility of the witnesses." *Id*.

It is well settled that admitting an involuntary confession into evidence violates a defendant's due process rights. *Lynumn v Illinois*, 372 US 528, 537; 83 S Ct 917; 9 L Ed 2d 922 (1963); *People v Conte*, 421 Mich 704, 722; 365 NW2d 648 (1984). When determining the voluntariness of a statement, a court looks to the totality of the circumstances to see if the statement was given voluntarily and was the product of the defendant's own free will. *People v Cipriano*, 431 Mich 315, 333-334; 429 NW2d 781 (1988). To determine whether the statement was freely and voluntarily made, the following factors are taken into consideration:

> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused

---

[2] *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

was physically abused; and whether the suspect was threatened with abuse. [*Id*. at 334.]

"The absence or presence of any one of these factors is not necessarily conclusive on the issue of voluntariness." *Id*.

The record reveals that defendant disclosed, as a routine part of his booking, that he suffered from asthma. Defendant's booking sheet indicated that he took Albuterol for his asthma, but he had not taken the medication in the past year. The booking sheet classified defendant's asthma as a "non-emergency medical issue." Detroit Police Sergeant Robert Wellman, who took defendant's statement, testified that defendant read and understood his *Miranda* rights at the outset of the interview. Defendant did not have any problem reading his rights, nor did he indicate that he did not understand them. In addition, defendant did not indicate that he took any type of medication or that he needed any type of medication. Wellman did not believe that defendant ever appeared in need of medical assistance or that he was unable to breathe. If defendant had displayed any sign that he needed medical attention or was suffering from some sort of illness, Wellman testified that he would have taken defendant to the hospital immediately, without waiting for defendant to finish giving his statement. Wellman did not need to take defendant to the hospital in this case, though, because defendant "didn't show any signs, at all" of the need for medical assistance.

Wellman further testified that after defendant indicated that he understood his rights, defendant confessed his involvement in the charged offenses, as well as additional, uncharged offenses. Defendant began giving his statement at approximately 8:55 p.m. on July 11, 2012, and finished his statement at approximately 11:15 p.m. Defendant read his statement at the end and verified its accuracy. Wellman testified that neither he nor anyone else used any physical force, verbal force, threats, or coercion in taking defendant's statement.

Wellman testified that after defendant gave his statement, he was returned to his jail cell. At approximately midnight, an officer conducted a walk-through of defendant's cell block and reported that everything was "okay" at that time. Later, at approximately 3:00 a.m. the morning after giving his statement, defendant was taken to the hospital. It appears that defendant was taken to the hospital, pursuant to police procedure, because his intake form indicated a non-emergency health issue. Defendant returned from the hospital at approximately 4:35 a.m. the same morning. While at the hospital, defendant was given a prescription for Albuterol; officers had this prescription filled for defendant. Records did not indicate whether defendant was given a dose of the prescription while he was in custody; however, records indicated that other asthma patients who were in custody were given doses of their respective medications.

The record supports the trial court's finding of voluntariness. According to unrebutted testimony, defendant indicated that he knew and understood his rights, and he was not threatened in any manner. And, contrary to defendant's assertions on appeal, there is no evidence to support his assertion that his statement was influenced by his asthma. Wellman presented unrebutted testimony that defendant did not appear to have any trouble breathing or that he otherwise needed medical assistance at the time he gave his statement. Although defendant subsequently visited the hospital, this does not render his statement involuntary. Rather, as noted, the only testimony presented at the *Walker* hearing was that defendant did not suffer from

any apparent medical conditions at the time he gave his statement. Furthermore, it appears that defendant's visit to the hospital was a matter of routine procedure, not associated with a medical emergency. Indeed, it is not apparent from the record that defendant was even given a dose of the medication he was prescribed—a medication he had reportedly not taken for over a year. As such, we find no basis for disturbing the trial court's finding that defendant's statement was voluntary. See *Cipriano*, 431 Mich at 334; *Shipley*, 256 Mich App at 372-373.

## III. OTHER ACTS EVIDENCE

Defendant next argues that the trial court erred in admitting evidence about the Moss carjacking. He also contends that the trial court erred in admitting testimony from Officer Dana Russell concerning another stolen automobile, a high-speed chase, and one of defendant's accomplices who fled from police officers. The prosecutor offered the evidence pursuant to MRE 404(b); he also argued that the evidence was admissible as res gestae evidence. The prosecutor argued that the other carjackings were so intertwined that presentation thereof was necessary in order to give the jury the complete circumstances of the charged offenses. The trial court ruled that the other-acts evidence was admissible pursuant to MRE 404(b).[4] The decision whether to admit evidence is within the trial court's discretion and will be reversed on appeal only if there is an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007).

### A. MOSS CARJACKING

Moss testified that on July 9, 2012, at approximately 6:30 a.m., he stopped his gold Ford Explorer at a gas station and went inside to purchase a cup of coffee. When he came out of the gas station, a silver Dodge Intrepid pulled up near him, and a man, later identified as Edward Spann[5], got out of the passenger seat, armed with a gun. The man pointed the gun at Moss's chest and told him to "give him my stuff." Moss dropped his keys on the ground and gave the man his phone and his money. One of the occupants of the Intrepid got out, picked up Moss's keys, jumped in the Explorer, and drove away. As will be discussed in more detail *infra*, Moss identified defendant as one of the occupants of the Intrepid.

---

[4] The trial court did not render a ruling as to whether the evidence was also admissible as res gestae evidence.

[5] Spann was convicted of several charges stemming from the events underlying this prosecution. His delayed application for leave to appeal was denied. *People v Spann*, unpublished order of the Court of Appeals, entered November 20, 2013 (Docket No. 317736).

## B. RUSSELL'S TESTIMONY

Russell testified that she was assigned to investigate the Moss carjacking and that, at around 6:30 p.m. on July 9, 2012, she saw Moss's Explorer parked at a gas station. She testified that she saw an individual in the Explorer conversing with individuals in a purple Chevrolet Caprice. Russell testified that she saw defendant in the Caprice, and that the Caprice had been stolen earlier.

The Caprice and the Explorer left the gas station and continued onto I-94 West; Russell followed them in an unmarked police car. While she was following the two vehicles, a white Cadillac Escalade pulled up alongside the Caprice and began motioning for the Caprice to pull over. Thereafter, Russell heard gunshots, but was not certain from which vehicles the gunshots originated. Russell testified that the vehicles were traveling approximately 90 to 95 miles per hour on the highway. Eventually, the Explorer exited the highway, and Russell continued to follow it. Later, a marked police car attempted a traffic stop on the Explorer, and one of the occupants jumped from the vehicle and ran.

Russell subsequently returned to the gas station where Moss's Explorer had been stolen and obtained surveillance video of the carjacking. She testified that someone in a white shirt was present inside the silver Intrepid during the carjacking. She also testified that, when she saw defendant in the stolen Caprice, he was wearing a white shirt.

## C. MRE 404(B)

To be admissible under MRE 404(b), other acts evidence (1) must be offered for a proper purpose, (2) must be relevant, and (3) must not have a probative value substantially outweighed by its potential for unfair prejudice. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). Additionally, upon request, the trial court "may provide a limiting instruction under MRE 105." *Id*.

A proper purpose is one offered "under something other than a character to conduct theory." *People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993), amended on other grounds 445 Mich 1205 (1994). Here, the prosecution sought to introduce other acts evidence to show a scheme, plan, or system in doing the acts, which is a proper purpose under MRE 404(b).

"Nevertheless, the prosecution may not mechanically recite a permissible reason without explaining how the evidence is relevant." *People v McGhee*, 268 Mich App 600, 610; 709 NW2d 595 (2005). Logical relevance is the "touchstone" of the admissibility of other acts evidence, and it "is determined by the application of" MRE 401 and 402. *People v Crawford*, 458 Mich 376, 388; 582 NW2d 785 (1998). MRE 401 provides that relevant evidence is evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevance has two elements: materiality and probative force. *McGhee*, 268 Mich App at 610. Evidence is material if it goes to a fact that is truly at issue. *Id*. If the evidence has any tendency to prove a fact at issue, then there is sufficient probative force. *People v Starr*, 457 Mich 490, 497-498; 577 NW2d 673 (1998).

Evidence of misconduct similar to that charged is logically relevant to show that the

charged act occurred if the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they were manifestations of a common plan, scheme, or system. *People v Dobek*, 274 Mich App 58, 90; 732 NW2d 546 (2007). Moreover, it must support an inference that the defendant employed the common plan or scheme in committing the charged offense. *People v Ackerman*, 257 Mich App 434, 440-441; 669 NW2d 818 (2003).

We find that the trial court did not err by admitting testimony about the Moss carjacking pursuant to MRE 404(b). The Moss carjacking was substantially similar to the charged carjacking so as to support an inference that they were manifestations of a common plan, scheme, or system. Both carjackings were committed less than one hour apart and they involved the same perpetrators, similar acts, and the same mode of operating—notably, the perpetrators would rapidly approach the victim in another vehicle, hit or come close to the victim's car to prevent the victim from escaping, have one or more assailants jump out and point a gun at the victim's chest or midsection, and then the perpetrators would demand the victim's personal possessions and take the victim's car. According to defendant's subsequently-admitted confession, he and his cohorts stole the vehicles pursuant to a plan to sell the vehicles to an individual who operated a repair shop. The similarity between the acts, and defendant's admitted motive in stealing the vehicles, demonstrates that they were part of the same plan, scheme, or system. See *Dobek*, 274 Mich App at 90; *Ackerman*, 257 Mich App at 440-441.

We also find that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. "The determination whether the probative value of evidence is substantially outweighed by its prejudicial effect is best left to a contemporaneous assessment of the presentation, credibility and effect of the testimony." *People v Waclawski*, 286 Mich App 634, 670; 780 NW2d 321 (2009). All relevant evidence is somewhat prejudicial. *People v Magyar*, 250 Mich App 408, 416; 648 NW2d 215 (2002). "Unfair prejudice occurs 'when there is a tendency that the evidence will be given undue or preemptive weight by the jury, or when it would be inequitable to allow use of the evidence.' " *Waclawski*, 286 Mich App at 672, quoting *People v Taylor*, 252 Mich App 519, 521-522; 652 NW2d 526 (2002).

Here the trial court properly found that although the other acts evidence was prejudicial to defendant, the prejudice did not substantially outweigh the evidence's probative effect. As the previous discussion shows, the evidence was highly probative on defendant's involvement in the charged crimes. It showed defendant's involvement in an orchestrated series of crimes that culminated in the armed robbery of Poineau and the carjacking of his vehicle. It was also significantly probative on issues of credibility related to defendant's confession. The prejudicial effect of the evidence stemmed directly from its relevance. The court's MRE 403 analysis was sound. Moreover, the trial court gave a clear limiting instruction on how the other acts evidence could be considered. Jurors are presumed to follow their instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).[6]

---

[6] To the extent that defendant argues that testimony about a high-speed chase and shooting on an interstate highway was wrongly admitted, we note that defendant's statement includes references to these events and that defendant does not argue that his statements related thereto were

-6-

## IV.  REFERENCES TO DEFENDANT'S PRIOR ARREST AND PENDING CHARGES

Next, defendant notes that his confession contained references to the fact that he had previously been arrested and that, at the time of his confession, he had additional, unrelated charges pending against him.  Defendant did not object to the admission of these statements at trial or move to redact the statements from his confession.  We review this unpreserved issue for plain error affecting substantial rights.  *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).  Under plain error review, reversal is not warranted unless the plain error resulted in the conviction of an innocent person or seriously affected the fairness, integrity, or public reputation of the proceedings.  *Id.*

Evidence of defendant's prior arrest and pending charges should have, upon request, been redacted from defendant's confession.  The prosecutor does not point to a proper purpose for admitting this evidence, nor can we ascertain any such purpose.  Moreover, such evidence is not probative as it has no tendency to make any fact of consequence more or less probable.  However, we cannot conclude that defendant's assertion of error affected his substantial rights or that it warrants reversal in this case.  Evidence of defendant's prior arrest and pending charges was unlikely to have affected the outcome at trial in light of the compelling evidence against defendant.  Defendant confessed to the charged offenses.  In addition, defendant's confession was corroborated, at least in part, by Moss's and Poineau's testimony.  As such, defendant cannot make the requisite showing of prejudice in order to establish that the plain error affected his substantial rights.  *Id.* at 356.

Defendant also argues that his counsel was ineffective for failing to object to the admission of that portion of his confession.  To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different.  *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007).  Here, assuming without deciding that defense counsel should have objected, defendant is not entitled to relief because he cannot show that the outcome of the proceedings would have been different.  See *id.*  As noted, the evidence against defendant was compelling, given defendant's confession and testimony from other witnesses that corroborated his confession.  As such, defendant is not entitled to relief on his attendant claim for ineffective assistance of counsel.

## V.  IDENTIFICATION

Defendant next argues he was denied due process because there was no independent basis for Moss's trial identification of defendant, which, he argues, was based on impermissibly

---

improperly admitted.  Moreover, in light of defendant's properly admitted confession to the charged offenses, we find that, even assuming error, defendant could not establish that the error, if any, was outcome determinative.  See *Lukity*, 460 Mich at 496 (internal quotation marks omitted) (explaining that "preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative.").

suggestive influences at the preliminary examination. "If a witness is exposed to an impermissibly suggestive pretrial identification procedure, the witness' in-court identification will not be allowed unless the prosecution shows by clear and convincing evidence that the in-court identification will be based on a sufficiently independent basis to purge the taint of the illegal identification." *People v Colon*, 233 Mich App 295, 304; 591 NW2d 692 (1998). "The defendant must show that in light of the totality of the circumstances, the procedure was so impermissibly suggestive as to have led to a substantial likelihood of misidentification." *Id.*

The determination whether an in-court identification has an independent basis is a factual inquiry, and the trial court's findings are reviewed for clear error. *People v Gray*, 457 Mich 107, 115; 577 NW2d 92 (1998). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002). Erroneously admitted identification testimony warrants reversal when the error is not harmless beyond a reasonable doubt. *People v Winans*, 187 Mich App 294, 299; 466 NW2d 731 (1991).

Although the trial court did not expressly find that the pretrial identification was unduly suggestive, we agree with defendant that it was a suggestive atmosphere. According to Moss, at the time he identified defendant, which was during the preliminary examination, defendant was wearing a prisoner's jumpsuit and was in handcuffs or chains. Although defendant was not the only person brought into the courtroom in chains and jail clothing, his presence in "prison garb" convinces us that the atmosphere was nonetheless suggestive. See *Colon*, 233 Mich App at 305 ("Here, there is no question that the preliminary examination was a suggestive atmosphere in that defendant was placed in the courtroom in prison garb.").

Without specifically concluding that the pretrial procedure was impermissibly suggestive, the trial court held that an independent basis for Moss's in-court identification existed:

> I'm satisfied that the identification was not the product of any police misconduct, and that basically that there is a basis by which this witness could identify him. He indicated that his identification was based solely upon what he recalls when he was being car-jacked; that he was able to, due to length of his attention, and there was nothing blocking his view of the defendant. He was somewhat familiar with him, but couldn't place him, although he did indicate to the officers that he did not know him.

The following eight factors should be considered, where relevant, to determine if an independent basis exists for admission of an in-court identification:

> (1) prior relationship with or knowledge of the defendant; (2) opportunity to observe the offense, including length of time, lighting, and proximity to the criminal act; (3) length of time between the offense and the disputed identification; (4) accuracy of description compared to the defendant's actual appearance; (5) previous proper identification or failure to identify the defendant; (6) any . . . identification lineup of another person as the perpetrator; (7) the nature of the offense and the victim's age, intelligence, and psychological state;

and (8) any idiosyncratic or special features of the defendant. [*People v Davis*, 241 Mich App 697, 702-703; 617 NW2d 381 (2000).]

At the *Wade* hearing, Moss testified that while he thought defendant looked familiar at the time of the offense, he did not initially identify defendant as one of the perpetrators. Later, however, he realized where he knew defendant, which was through defendant's family.[7] He testified that he had known defendant's mother for around ten years before the carjacking, although he had not seen defendant in seven years and defendant was a child at the time. He testified that he did not have any question that defendant is the person he saw at the time of the offense. He further testified that the carjacking lasted 12 to 13 seconds, that it was daylight, and that defendant did not have anything covering his face. Moss specifically stated that he could "see [defendant's] face" and that defendant had "braids or dreads." He said the car defendant was in was probably four to five feet away. Further, Moss had not previously failed to identify defendant; he testified that he was sick at the time a lineup was offered and he did not reschedule. Additionally, there are no allegations that Moss identified someone else as the person in the backseat of the car. Based on these facts, we conclude that the trial court did not clearly err in finding that Moss had a sufficiently independent basis upon which to identify defendant. See *Gray*, 457 Mich at 115. Moreover, given the overwhelming evidence presented by defendant's confession to having committed the offense, as corroborated by other evidence, any error in admitting Moss's identification testimony was harmless beyond a reasonable doubt such that reversal is not required. See *Winans*, 187 Mich App at 299.

## VI. SENTENCING

Lastly, defendant argues that the trial court scored offense variable (OV) 1, OV 2, and OV 10 incorrectly. Defendant did not object to the scoring of these offense variables at sentencing. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. However, unpreserved challenges to the sentencing guidelines are reviewed for plain error affecting defendant's substantial rights. *People v Meshell*, 265 Mich App 616, 638; 696 NW2d 754 (2005).

---

[7] Defendant's mother testified at the *Wade* hearing that she spoke with Moss outside the courtroom before the preliminary examination. He told her that he was in court because he had been carjacked by "some dark-skinned dudes" and she told him that she was there because her son was "in some stuff," but she never pointed defendant out to Moss. Moss testified that defendant's mother spoke to him after he identified defendant at the preliminary examination and that she apologized for her son's actions.

## A. OV 1

The trial court scored 15 points for OV 1. OV 1 addresses the aggravated use of a weapon. MCL 777.31(1). The trial court must score 15 points if "a firearm was pointed at or toward a victim . . . ." MCL 777.31(1)(c). However, the trial court must only score 5 points if "a weapon was displayed or implied." MCL 777.31(1)(e). Defendant argues that a "firearm" was not pointed toward Poineau because the weapon used was a BB gun, which does not qualify as a firearm under MCL 8.3t.[8] MCL 8.3t provides:

> The word "firearm", except as otherwise specifically defined in the statutes, shall be construed to include any weapon from which a dangerous projectile may be propelled by using explosives, gas or air as a means of propulsion, except any smooth bore rifle or handgun designed and manufactured exclusively for propelling BB's not exceeding .177 calibre by means of spring, gas or air.

Here, the testimony established that a BB gun was used in the carjacking and armed robbery, and there is no record evidence establishing that the BB gun was capable of propelling BB's exceeding .177 calibre. Accordingly, because the BB gun does not meet the definition of "firearm," the trial court erred in scoring OV 1 at 15 points. However, it would have been appropriate to score 5 points because a BB gun is certainly a "weapon" and it was—according to Poineau's testimony—displayed.

## B. OV 2

The trial court scored 5 points for OV 2, which addresses the lethal potential of a weapon possessed or used during the commission of the offense. MCL 777.32(1). The trial court must assess 5 points if the offender "possessed or used a pistol, rifle, shotgun . . . ," MCL 777.32(1)(d), 1 point if the offender "possessed or used any other potentially lethal weapon," MCL 777.32(1)(e), and no points are assessed if the offender "possessed or used no weapon," MCL 777.32(1)(f). A " '[p]istol', 'rifle', or 'shotgun' includes a revolver, semi-automatic pistol, rifle, shotgun, combination rifle and shotgun, or other firearm manufactured in or after 1898 that fires fixed ammunition, but does not include a fully automatic weapon or short-barreled shotgun or short-barreled rifle." MCL 777.32(3)(c). Defendant asserts that a BB gun does not fire fixed ammunition, so it was inappropriate for the trial court to score OV 2 at 5 points. Plaintiff concedes that OV 2 was misscored and should have been scored at 0 points. We agree that the trial court erred in scoring OV 2 at 5 points. And because there is no record evidence that the BB gun was potentially lethal or used in such a way to represent a potentially lethal weapon, we agree that no points should have been scored for OV 2.

---

[8] Plaintiff fails to address the scoring of OV 1 in its appellate brief.

## C. OV 10

Here, the trial court scored 15 points under OV 10. OV 10 addresses the exploitation of a vulnerable victim. MCL 777.40(1). The trial court must assess 15 points if "[p]redatory conduct was involved." MCL 777.40(1)(a). " '[P]redatory conduct' under the statute is behavior that is predatory in nature, precedes the offense, [and is] directed at a person for the primary purpose of causing that person to suffer from an injurious action . . . ." *People v Huston*, 489 Mich 451, 463; 802 NW2d 261 (2011) (citation and quotation omitted). In *Huston*, our Supreme Court recognized that "[f]ew criminal offenses arise utterly spontaneously and without forethought." *Id*. at 461. Accordingly, "reading MCL 777.40(1)(a) as requiring 15 points to be assessed for OV 10 in *every* case would essentially render nugatory MCL 777.40(1)(b) through (d), the provisions directing when OV 10 requires a score of 10, 5, and zero points respectively[.]" *Id*. at 461-462. "To enable MCL 777.40(1)(a) whenever there is *any* 'preoffense conduct' would effectively ensure that MCL 777.40(1)(b) through (d) would never be enabled." *Id*. at 462.

> Thus, to give meaning to the entirety of MCL 777.40(1), and out of recognition that 15 points for "predatory conduct" constitutes the highest number of points available under OV 10 and that "preoffense conduct" is being used to define "predatory conduct," [our Supreme Court] conclude[d] that the latter term does not encompass *any* "preoffense conduct," but rather only those forms of "preoffense conduct" that are commonly understood as being "predatory" in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection. [*Id*. (citation and quotation omitted).]

Here, the record does not show that there was any predatory conduct on defendant's part. Defendant's statement makes clear that he and a group of others were driving around looking for possible victims. They had a general plan to take their victims' money and vehicles, but nothing on the record suggests that they were lying in wait or stalking the victims. In particular, in regard to Poineau, defendant said in his statement that they were heading to his uncle's house when they saw Poineau's vehicle. Defendant said that another of his associates called Spann and told him they were going to "get" the car behind Spann. After the call, the two vehicles stopped, boxing Poineau's vehicle in so he could not drive away. Although a group of perpetrators surrounded Poineau, nothing on the record suggests this was anything other than a spontaneous crime of opportunity, albeit one that was executed in accord with a common scheme or plan. Accordingly, the trial court erred in scoring OV 10 at 15 points. See *id.* (explaining that predatory conduct is more than purely opportunistic criminal conduct).

According to the sentencing information report attached to defendant's brief, defendant's total OV score, including the errors noted above, was 65 points. For the Class A offense of carjacking, see MCL 777.16y, this placed defendant in OV Level IV on the sentencing grid. See MCL 777.62. Combined with defendant's PRV Level C, defendant's recommended minimum guidelines range was 108 to 180 months; his 120-month minimum sentence was within that original range. See MCL 777.62. After reducing OV 1 to 5 points and subtracting the points erroneously scored under OVs 2 and 10, defendant's total OV score is 35 points. This places defendant in OV Level II. See MCL 777.62. An OV Level II and PRV Level C combination

produces a recommended minimum sentence of 51 to 85 months' imprisonment. See MCL 777.62. Defendant's 120-month sentence is outside of this range. Because defendant's sentence is based upon an inaccurate calculation of the guidelines range, which resulted in a sentence outside the proper recommended minimum sentence range under the legislative guidelines, defendant can show plain error and he is entitled to be resentenced. *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006); *People v Kimble*, 470 Mich 305, 312-313; 684 NW2d 669 (2004).

We affirm defendant's convictions, but remand for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Jane M. Beckering
/s/ Mark T. Boonstra